Sitting: Rebeca C. Martinez, Justice, Irene Rios, Justice, Beth Watkins, Justice
Irene Rios, Justice
Calvin Day Jr., M.D. ("Day") sued the Federation of State Medical Boards of the United States, Inc. ("the Federation") for defamation and tortious interference with prospective business relations. In response, the Federation moved to dismiss Day's lawsuit pursuant to the Texas Citizens Participation Act ("TCPA"). See TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001 -.011. The trial court granted the Federation's motion to dismiss and awarded it $ 83,292.50 in attorney's fees. Day filed this appeal.
In four issues, Day argues the trial court erred by (1) denying his motion to strike an affidavit, (2) dismissing his suit because the TCPA did not apply, (3) dismissing his suit because he established a prima facie case for both defamation and tortious interference, and (4) awarding the Federation $ 83,292.50 in attorney's fees. We overrule Day's issues and affirm the trial court's judgment.
BACKGROUND
The Texas State Medical Board ("the Board") is a state agency that regulates the practice of medicine in Texas. TEX. OCC. CODE ANN. § 152.001(a). In June 2011, the Board temporarily suspended Day's medical license and commenced administrative proceedings against him. The suspension was prompted by complaints of "boundary violations" made by six individuals, including several of Day's patients, and Day's arrest and indictment for sexual assault arising from one of these complaints. A *816 jury convicted Day of sexual assault, but the conviction was set aside when the trial court granted a new trial. The criminal charges against Day were eventually dismissed. In addition, four of the six complainants refused to cooperate in the Board's administrative investigation. By early 2017, only one of the complaints remained pending before the State Office of Administrative Hearings. On March 3, 2017, Day and the Board entered into an "Agreed Order," which resolved the remaining administrative complaint, lifted the suspension of Day's medical license, and imposed numerous restrictions on Day's practice of medicine.
The Federation maintains a website that provides physician data, including sanctions reported by state licensing boards. The part of the Federation's website known as the "Physician Data Center" contains a profile for each physician, including his or her licensure history, education, training, and biographical information. The Federation received the Agreed Order from the Texas Medical Board and, under the heading, "Board Actions," posted the following information on its website pertaining to Day:
Reporting Entity: Texas Medical Board
Date of Order: 3/3/2017
Form of Order: Agreed Order
Action(s): RESTRICTIONS/LIMITATIONS PLACED ON MEDICAL LICENSE/PRACTICE
Basis: Unprofessional Conduct
Day complained to the Federation that the "unprofessional conduct" statement was false and insisted that it be removed from his profile. Day asserted that the restrictions the Board placed on his return to practice were based solely on the fact that he had not practiced for six years because of his suspension. The Federation responded to Day's complaint by asking the Board if the "unprofessional conduct" statement was accurate. The Board advised the Federation that the "unprofessional conduct" statement was "a true, fair, and accurate description of the Agreed Order." The Federation declined to remove the statement from its website. Thereafter, Day sued the Federation for defamation and tortious interference with prospective business relations.
The Federation moved to dismiss Day's suit pursuant to the TCPA. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (providing a party may file a motion to dismiss a legal action based on, related to, or in response to its exercise of the right to free speech). The Federation's motion was supported by the affidavit of Scott Freshour, the Board's interim executive director, and other evidence. Day filed a response to the motion to dismiss, to which he attached his own affidavit and other evidence. After a hearing, the trial court signed an order granting the Federation's motion to dismiss. This appeal followed.
DISMISSAL UNDER THE TCPA
Commonly referred to as an anti-SLAPP[1] law, the TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." In re Lipsky , 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); see KBMT Operating Co., LLC v. Toledo , 492 S.W.3d 710, 713 n.6 (Tex. 2016). When a plaintiff brings a claim that infringes on a defendant's right to speak on a matter of public concern, the TCPA authorizes a defendant to file a motion to dismiss. See Toledo , 492 S.W.3d at 713 ; In re Lipsky , 460 S.W.3d at 584. In *817 deciding whether a plaintiff's claim should be dismissed under the TCPA, the trial court considers the pleadings as well as supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a).
Dismissal of a claim under the TCPA generally involves a two-step process. In re Lipsky, 460 S.W.3d at 586. The initial burden is on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's "legal action is based on, relates to, or is in response to the [defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) ; In re Lipsky , 460 S.W.3d at 586-87. " 'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "[m]atter of public concern" "includes an issue related to health or safety." Id. § 27.001(7)(A). This initial step is commonly referred to as establishing the applicability of the TCPA. See Lippincott v. Whisenhunt , 462 S.W.3d 507, 510 (Tex. 2015) (recognizing that after the defendants "successfully demonstrated the applicability of the [TCPA]" the court of appeals must consider whether the plaintiff "met the prima facie burden the [TCPA] requires.").
If the defendant meets its initial burden, then the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) ; In re Lipsky , 460 S.W.3d at 587. A prima facie showing "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." In re Lipsky , 460 S.W.3d at 590. A prima facie showing is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." Id.
We review de novo a trial court's ruling on a motion to dismiss filed pursuant to the TCPA. Adams v. Starside Custom Builders, LLC , 547 S.W.3d 890, 897 (Tex. 2018) ; Robert B. James, DDS, Inc. v. Elkins , 553 S.W.3d 596, 603 (Tex. App.-San Antonio 2018, pet. denied).
DENIAL OF MOTION TO STRIKE
In support of its motion to dismiss, the Federation submitted the affidavit of the Texas Medical Board's interim executive director, Scott Freshour. Day filed a motion to strike Freshour's affidavit, arguing "a court cannot go outside the order itself in reviewing the content of the order and the agency action therein." The trial court denied the motion to strike. In his third issue, Day argues the trial court erred in denying his motion to strike, claiming Freshour's affidavit "improperly presented evidence outside the four corners of the [Agreed Order.]"
We review a trial court's evidentiary ruling, such as its ruling on a motion to strike an affidavit, for an abuse of discretion. Sw. Energy Prod. Co. v. Berry-Helfand , 491 S.W.3d 699, 727 (Tex. 2016) ; Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co. , 472 S.W.3d 744, 754 (Tex. App.-Houston [1st Dist.] 2015, no pet.). Here, the trial court acted well within its discretion in denying Day's motion to strike. First, the TCPA expressly authorizes the trial court to consider affidavits in deciding a motion to dismiss. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."). Second, in his motion to strike, Day cited *818 Morgan Drive Away, Inc. v. R.R. Comm'n of Tex. , 498 S.W.2d 147, 152 (Tex. 1973), but Morgan does not apply to the present case. In Morgan , the supreme court recognized, in the context of an appeal of an administrative order, that the reviewing court could "consider only what was written by the Commission in its order" and "measure its statutory sufficiency by what [the order] says." Id. at 149, 152. This rule does not apply to appellate review of a dismissal order under the TCPA.
Because the trial court did not abuse its discretion in denying Day's motion to strike Freshour's affidavit, we overrule Day's third issue.
APPLICABILITY OF THE TCPA
In his second issue, Day argues the trial court erred in granting the Federation's motion to dismiss because the Federation failed to show that the TCPA applies to his claims. Whether the parties have satisfied their respective burdens under the TCPA is an issue that we review de novo. Elkins , 553 S.W.3d at 603.
In arguing that the TCPA does not apply to his claims, Day argues that "[t]ypically, SLAPP suits are filed by large businesses and other deep-pocketed entities to silence criticism aimed at them by average citizens," but in this case the "corporate goliath seeking to suppress the [First] [A]mendment rights of a small, helpless [p]laintiff simply does not exist."[2] However, Day misstates the criteria for determining the applicability of the TCPA. To establish the applicability of the TCPA, the Federation was required to prove, by a preponderance of the evidence, that Day's lawsuit was based on, related to, or was in response to the Federation's exercise of the right of free speech. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). The pleadings and the affidavits establish that Day's suit was based on a communication-a statement made on the Federation's website-and that this communication was made in connection with a matter of public concern-a state licensing board's action concerning Day's medical license. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A) (defining "matter of public concern" as including an issue related to "health or safety"); Lippincott , 462 S.W.3d at 510 ("We have previously acknowledged that the provision of medical services by a health care professional constitutes a matter of public concern."). Therefore, the Federation satisfied its initial burden to show the applicability of the TCPA. See Lippincott , 462 S.W.3d at 509-10 (concluding hospital administrators demonstrated the applicability of the TCPA when they were sued for defamation and tortious interference based on emails they had sent concerning whether a nurse had properly provided medical services to patients); Memorial Hermann Health Sys. v. Khalil , No. 01-16-00512-CV, 2017 WL 3389645, at *2-3, *6 (Tex. App.-Houston [1st Dist.] Aug. 8, 2017, pet. denied) (holding hospital met its initial burden to show application of TCPA when a doctor sued a hospital for defamation and other claims in response to chief of staff's letter listing negative findings about doctor's job performance). We overrule Day's second issue.
PRIMA FACIE CASE-DEFAMATION AND TORTIOUS INTERFERENCE
Because the Federation met its initial burden to show the applicability of the TCPA, the burden shifted to Day to establish "by clear and specific evidence a prima facie case for each essential element" of his claims. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) ; In re Lipsky , 460 S.W.3d at 587. In his first issue, Day argues the trial court erred in granting the Federation's *819 motion to dismiss because he established a prima facie case for each of his claims. We must examine Day's pleadings and the evidence to determine whether Day met his burden to establish, by clear and specific evidence, a prima facie case as to each essential element of his claims.
Defamation
Defamation has been defined as "the invasion of a person's interest in [his] reputation and good name." Hancock v. Variyam , 400 S.W.3d 59, 63 (Tex. 2013). A plaintiff claiming defamation must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault regarding the truth of the statement, and (4) damages unless the statement was defamatory per se. D Magazine Partners, L.P. v. Rosenthal , 529 S.W.3d 429, 434 (Tex. 2017) ; In re Lipsky , 460 S.W.3d at 593. The pivotal elements in this case are whether Day established, by clear and specific evidence, a prima facie case as to (1) the falsity of the "unprofessional conduct" statement, and (2) the requisite degree of fault as to the truth of the "unprofessional conduct" statement.
1. Falsity of the Statement
The "threshold requirement" for defamation is "the publication of a false statement of fact to a third party." Dallas Morning News, Inc. v. Tatum , 554 S.W.3d 614, 623 (Tex. 2018). "If a statement is not verifiable as false, it is not defamatory." Id. at 624 To determine if a statement is false for defamation purposes, courts utilize the substantial truth doctrine. Neely v. Wilson , 418 S.W.3d 52, 63 (Tex. 2013). "The common law of libel[3] takes but one approach to the question of falsity, regardless of the form of the communication." Masson v. New Yorker Magazine, Inc. , 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). "It overlooks minor inaccuracies and concentrates upon substantial truth." Id. "A statement need not be perfectly true; as long as it is substantially true, it is not false." Toledo , 492 S.W.3d at 714. Furthermore, courts determine a statement's meaning "by construing the publication [ ] as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." Id. at 721 (internal quotations omitted).
To determine if Day met his burden to establish, by clear and specific evidence, a prima facie case that the Federation's "unprofessional conduct" statement was false, we examine Day's pleadings and the relevant evidence. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). Establishing by clear and specific evidence a prima facie case for each essential element of a claim "describes the clarity and detail required to avoid dismissal." In re Lipsky , 460 S.W.3d at 590. "A prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." Id. "It is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." Id. (internal quotations omitted). In the context of the TCPA, the word "clear" means "unambiguous," "sure," or "free from doubt," and the word "specific" means "explicit" or "relating to a particular named thing." Id. Furthermore, "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." Id. "[M]ere notice pleading-that is, general *820 allegations that merely recite the elements of a cause of action-will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for [his] claim." Id. at 590-91.
Day's pleadings state that his defamation claim is based on allegations that the Federation mischaracterized the Agreed Order on its website. According to Day's petition, the Federation "falsely pos[t]ed in its physician data center that the basis of the Agreed Order was 'Unprofessional Conduct.' " Day's petition further alleges that the "unprofessional conduct" statement on the Federation's website was false because the Agreed Order contained "no adverse findings" regarding Day's "professional competence or conduct."
On appeal, Day does not dispute that he was required to establish the falsity of the "unprofessional conduct" statement. Day argues that he met his burden as to this element of defamation, relying on the Agreed Order itself. Given Day's argument, we carefully examine the contents of the Agreed Order.
The Agreed Order states that the "charges" before the Board were allegations that Day had "engaged in unprofessional conduct including boundary violations with respect to six women, several of whom were patients." It further states that a formal complaint was filed with the State Office of Administrative Hearings, but that before proceeding to a hearing on the merits, "the parties engaged in negotiations and reached this settlement." The Agreed Order contains numerous findings, including: (1) that Day was convicted of one count of sexual assault; (2) that Day's conviction was overturned based on misconduct by both the defense attorneys and the prosecutors; (3) that Day's criminal case was eventually dismissed when the complainants refused to testify at trial; (4) that four of the five complainants refused to cooperate in the administrative case; (5) that Day was still the subject of one formal complaint at the State Office of Administrative Hearings "regarding allegations of unprofessional conduct in his medical practice;" (6) that the Board considered "[m]itigating [f]actors" in determining "appropriate sanctions in this matter;" and that (7) Day "agree[d] to the entry of this Agreed Order" "[t]o avoid further investigation, hearings, and the expense and inconvenience of litigation."
The Agreed Order also contains "Conclusions of Law," some of which cite to Chapter 164 of the Occupations Code, the Texas statutory scheme governing disciplinary actions for physicians. Among other things, the conclusions of law state that Chapter 164 "authorizes the Board to take disciplinary action against [Day] based upon [Day's] unprofessional or dishonorable conduct" and "authorizes the Board to impose a range of disciplinary actions against a person for violations of the [Occupations Code]." See TEX. OCC. CODE ANN. §§ 164.052(a)(5) ; 164.001.
The Agreed Order lifts the suspension of Day's medical license under certain terms and conditions. Specifically, the Agreed Order requires Day to participate in a proctorship, whereby his medical work is supervised by another physician for approximately six months. The supervising physician is required to report to the Board about whether Day has the skills, abilities, and knowledge to return to the practice of medicine. The Agreed Order also requires Day (1) to limit his medical practice to a group or institutional setting, (2) to continue the practice of having at least one other health care professional in the room when seeing or treating patients, (3) to keep a log of his patient interactions, (4) to have the other health care professional contemporaneously initial the log entries, and (5) to provide a copy of the *821 Agreed Order to all health care entities with which he affiliates or seeks to affiliate.
Day argues the Agreed Order itself establishes the falsity of the Federation's "unprofessional conduct" statement. Emphasizing that the Agreed Order does not contain an explicit finding that he engaged in "unprofessional conduct," Day contends the Agreed Order shows that the restrictions imposed on him had "nothing to do with any misconduct." Day further contends the Agreed Order shows that the purpose of the restrictions imposed on him was to ensure that his "skills had not atrophied during his hiatus from practice." We disagree.
Both the language and the effect of the Agreed Order support the Federation's statement that the "basis" of the order was "unprofessional conduct." The Agreed Order expressly states that it is the result of a settlement between Day and the Board and that it resolves the remaining complaint that Day had engaged in "unprofessional conduct including boundary violations." Additionally, the Agreed Order explains that the Board considered "mitigating factors" in deciding "appropriate sanctions" for Day. The use of the word "sanctions" indicates that the purpose of the Agreed Order, at least in part, was to administer disciplinary action against Day. Furthermore, in addition to requiring Day to be supervised by another physician while performing medical procedures and requiring the supervising physician to provide feedback to the Board, the Agreed Order imposes numerous other restrictions on Day's practice of medicine, including requiring Day to have another health professional in the room while seeing patients, requiring Day to keep a log of his patient interactions, and requiring Day to practice medicine only in a group or institutional setting. Finally, the Agreed Order operates to resolve the remaining "unprofessional conduct" charge against Day, lift the temporary suspension of Day's license, and impose restrictions on Day's practice of medicine.
We conclude the Agreed Order does not demonstrate, by clear and specific evidence, the falsity of the Federation's "unprofessional conduct" statement. To the contrary, when considered in its entirety, the Agreed Order shows that the Federation's statement that the "basis" of the order was "unprofessional conduct" was substantially true.
Additionally, the evidence in this case includes the affidavit of the Board's interim executive director, Freshour, who testified that the Board suspended Day's medical license and began conducting a disciplinary review of Day based on allegations of unprofessional conduct; that this review lasted several years; that the Board and Day entered into the Agreed Order on March 3, 2017; that the Board forwarded the Agreed Order to the Federation; and that after Day complained about the "unprofessional conduct" statement on the Federation's website, the Board advised the Federation that this statement was "a true, fair, and accurate description of the Agreed Order."
After examining the pleadings and the evidence, we conclude that Day did not present clear and specific evidence sufficient as a matter of law to establish the falsity of the "unprofessional conduct" statement. See In re Lipsky , 460 S.W.3d at 590. We hold that Day failed to meet his burden to establish a prima facie case regarding the falsity of the challenged statement.
2. Requisite Degree of Fault
Another key element in this case is the requisite degree of fault regarding the truth of the statement. Generally, *822 the requisite degree of fault in a defamation case depends on the status of the allegedly defamed person. Id. at 593. A public figure plaintiff must establish that the defendant acted with actual malice, which requires a showing that the statement was made with knowledge of its falsity or reckless disregard for its truth. Id. However, when a defamation plaintiff is a private individual, he must establish that the defendant acted negligently regarding the truth of the statement. See Tatum , 554 S.W.3d at 634 ; WFAA-TV, Inc. v. McLemore , 978 S.W.2d 568, 571 (Tex. 1998).
Here, the parties disagree about the requisite degree of fault. Day argues that he was required to establish that the Federation acted negligently with regard to the truth of the statement because he is a private individual. The Federation counters that Day was required to establish that the Federation acted with actual malice. We will assume, without deciding, that the requisite degree of fault in this case is negligence.
In the defamation context, negligence is defined "as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person." Harwood v. Gilroy , No. 04-16-00652-CV, 2017 WL 2791321, at *6 (Tex. App.-San Antonio June 28, 2017, no pet.) (internal quotations omitted). In other words, the plaintiff must establish that the defendant knew or should have known that the defamatory statement was false. Sanders v. Sanders , No. 05-16-00248-CV, 2017 WL 3712167, at *4-5 (Tex. App.-Dallas Aug. 29, 2017, no pet.) ; French v. French , 385 S.W.3d 61, 73 (Tex. App.-Waco 2012, pet. denied). Therefore, to establish a prima facie case as to the requisite degree of fault, Day was required to establish, by clear and specific evidence, that the Federation knew or should have known that the "unprofessional conduct" statement was false. See Sanders , 2017 WL 3712167, at *4-5 ; Harwood , 2017 WL 2791321, at *6.
Initially, we note that Day's petition does not include specific facts to support his contention that the Federation acted negligently. The only reference to negligence in Day's petition is a statement that the Agreed Order contains "insufficient underlying Findings of Facts to support any conclusion of law and renders the [Federation's] postings to be arbitrary, capricious, libelous, and negligent." Thus, Day's petition fails to point to the clear and specific evidence that is required when the TCPA is implicated. See In re Lipsky , 460 S.W.3d at 590-91. Additionally, Day's response to the motion to dismiss states only that the Federation "was given the opportunity to alter its posting to reflect the correct findings of the order and despite an in-depth explanation, refused to do so. Therefore, the requisite degree of fault on the part of the [Federation] is evident."
Despite the lack of specificity in Day's pleadings, we will consider the evidence as it relates to this element of Day's defamation claim. In arguing on appeal that he established a prima facie case regarding the requisite degree of fault, Day focuses on several documents attached to his affidavit: (1) the Agreed Order, (2) the emails Day sent to the Federation complaining that its "unprofessional conduct" statement was false, and (3) the description of the Agreed Order on the Board's website. We disagree that this evidence establishes the Federation's negligence with respect to the truth or falsity of the statement.
As discussed in the previous section, the Agreed Order supports the Federation's "unprofessional conduct" statement and shows this statement is not false. Furthermore, the emails show that when the Federation *823 received a complaint from Day about the "unprofessional conduct" statement, it contacted the Board about the accuracy of this statement, and the Board advised the Federation that the "unprofessional conduct" statement accurately reflected the basis of the Agreed Order.
Day maintains that the Federation's negligence is established by comparing the description of the Agreed Order posted on the Board's website with the Federation's statement. However, this is not a valid comparison. The Federation posted its "unprofessional conduct" statement in 2017, but the description of the Agreed Order posted on the Board's website is dated June 28, 2018. Furthermore, no other evidence shows the Federation was aware of or should have been aware of the description posted on the Board's website. See Sanders , 2017 WL 3712167, at *4 (stating in a defamation case that "[b]ecause the evidence did not show [the defendant] was aware of the report, the evidence could not have conclusively proved the report put [the defendant] on notice that her statements were false."). Therefore, we conclude the evidence does not establish that the Federation knew or should have known that its "unprofessional conduct" statement was false.
To defeat the Federation's motion to dismiss, Day was required to present clear and specific evidence "sufficient as a matter of law to establish [the Federation's negligence] if it is not rebutted or contradicted." See In re Lipsky , 460 S.W.3d at 590. Nothing in the record shows that the Federation failed to investigate the truth or falsity of the statement, that the Federation failed to act reasonably, or that the Federation knew or should have known the statement was false when it made it. Rather, the evidence shows that the Federation's statement was substantially true, that the Federation responded to Day's complaint by consulting with the Board about the statement's accuracy, and that the Board confirmed that the statement was accurate. After considering the pleadings and the evidence, we conclude that Day failed to establish, by clear and specific evidence, a prima facie case that the Federation acted negligently with regard to the truth of its "unprofessional conduct" statement. Therefore, Day failed to meet his burden to establish a prima facie case regarding the requisite degree of fault.
Because Day failed to satisfy his burden to establish, by clear and specific evidence, a prima facie case as to at least two elements of his defamation claim, the trial court did not err in dismissing this claim under the TCPA.
Tortious Interference with Prospective Business Relations
To establish a claim for tortious interference with prospective business relations, a plaintiff must establish (1) a reasonable probability the plaintiff would have entered into a business relationship with a third party, (2) the defendant acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of its conduct, (3) the defendant's conduct was independently tortious or unlawful, (4) the defendant's interference proximately caused the plaintiff's injury, and (5) as a result the plaintiff suffered actual damage or loss. Coinmach Corp. v. Aspenwood Apartment Corp. , 417 S.W.3d 909, 923 (Tex. 2013). "Independently tortious" means the defendant's conduct would be actionable under a recognized tort. Wal-Mart Stores, Inc. v. Sturges , 52 S.W.3d 711, 726 (Tex. 2001).
To survive the Federation's motion to dismiss and maintain his tortious interference claim, Day was required to establish, by clear and specific evidence, a prima facie case as to every element of this *824 claim. Day's petition shows that his tortious interference claim was premised on the Federation's "unprofessional conduct" statement. According to Day's petition, Day "operate[d] in a highly competitive [field] and maintain[ed] his competitive edge by virtue of his business relationships and by his Board Certification" "and by his ability to be accepted on insurance panels," which the "unprofessional conduct" statement "prevents him from doing." Day's petition further alleges the Federation "knew interference with his ability to obtain the above was certain or substantially certain to occur as a result of the publication" of the statement and that the Federation's "willful and intentional interference was the proximate cause of actual harm and/or damages" to him.
On appeal, Day argues he met his burden to demonstrate a prima facie case for tortious interference with prospective business relations. The third element of Day's claim-whether he established that the Federation's conduct was independently tortious-is dispositive. Day argues that he established a prima facie case that the Federation's conduct was independently tortious, relying exclusively on his contention that the Federation's "unprofessional conduct" statement was defamatory. But as previously discussed, Day failed to present clear and specific evidence to establish a prima facie case as to at least two elements of his defamation claim, the falsity of the statement and the requisite degree of fault. Therefore, we conclude Day failed to satisfy his burden to establish, by clear and specific evidence, a prima facie case that the Federation's conduct was independently tortious or wrongful. See Van Der Linden v. Khan , 535 S.W.3d 179, 196 n.8 (Tex. App.-Fort Worth 2017, pet. denied) (stating that whether the plaintiff provided evidence of an independently tortious act would be discussed in conjunction with the plaintiff's defamation claim); Brown v. Swett & Crawford of Tex., Inc. , 178 S.W.3d 373, 382-3 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (concluding the trial court properly granted summary judgment on a tortious interference claim premised on defamation when the plaintiff provided no evidence that the statements made were defamatory or false). Because Day failed to establish, by clear and specific evidence, a prima facie case as to every element of his tortious interference claim, the trial court did not err in dismissing this claim under the TCPA.
We overrule Day's first issue.
ATTORNEY'S FEES
In his fourth issue, Day claims the trial court erred in awarding the Federation $ 83,292.50 in attorney's fees because the Federation "failed to even [a]ddress the requirement of equity and justice" and its affidavits "did not support the amount of fees claimed." In this issue, Day raises multiple complaints: (1) the Federation failed to present evidence of its attorney's fees at the motion to dismiss hearing, (2) the Federation made no showing of "justice and equity," (3) the affidavits supporting the attorney's fees motion failed to comply with section 18.001 of the Texas Civil Practice and Remedies Code, and (4) the Federation failed to prove that the attorney's fees requested were reasonable and necessary.
The record shows the trial court held a hearing on the Federation's motion to dismiss on July 17, 2018, and signed an order granting the motion to dismiss on July 20, 2018. Thereafter, on August 9, 2018, the Federation filed a motion for attorney's fees, supported by two affidavits and billing records. On August 17, 2018, Day filed a response opposing the motion for attorney's fees. Day did not file a controverting affidavit, nor did he request additional *825 time to file a response or a controverting affidavit. On August 20, 2018, the trial court signed a judgment awarding the Federation $ 83,292.50 in attorney's fees. This judgment states the trial court considered the affidavits and billing records submitted by the Federation.
1. Failure to Present Evidence at the Motion to Dismiss Hearing
Day complains the trial court erred in awarding attorney's fees because the Federation did not present evidence of its attorney's fees at the hearing on the motion to dismiss.
Although the Federation was required to present evidence in the trial court to support the award of attorney's fees, it was not necessarily required to present this evidence at the dismissal hearing. In fact, one of the cases Day cites in his brief, Brownhawk, L.P. v. Monterrey Homes, Inc. , 327 S.W.3d 342, 348-49 (Tex. App.-El Paso 2010, no pet.), concluded it was proper to consider an attorney's fees affidavit presented to the trial court prior to judgment as evidence supporting the attorney's fees awarded in the judgment. Id. at 349.
Here, as in Brownhawk , the record shows that the Federation's attorney's fees affidavits and billing records were presented to the trial court before it rendered judgment. See ids="7321423" index="59" url="https://cite.case.law/sw3d/327/342/#p348">id. Additionally, the trial court's judgment states the trial court considered these affidavits and billing records in awarding attorney's fees. Therefore, the record contains some evidence to support the trial court's award of attorney's fees.
2. "Justice and Equity"
Day next complains the trial court erred in awarding attorney's fees because the Federation made no showing of "justice and equity."
Section 27.009 of the Texas Civil Practice and Remedies Code provides that when a trial court dismisses a legal action under the TCPA, it "shall award to the moving party [ ] court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). In Sullivan v. Abraham , 488 S.W.3d 294 (Tex. 2016), the Texas Supreme Court examined section 27.009(a)'s language and punctuation and held that the phrase "justice and equity" applies only to an award of "other expenses incurred in defending against the legal action," and does not apply to an award of "reasonable attorney's fees." Id. at 299. In light of Sullivan , the Federation was not required to make a showing of "justice and equity" with regard to its attorney's fees. See ids="6802377" index="62" url="https://cite.case.law/sw3d/488/294/">id. (holding that an award of attorney's fees under the TCPA "does not [ ] specifically include considerations of justice and equity.").
3. Compliance with Section 18.001
" Section 18.001 [of the Texas Civil Practice and Remedies Code] governs proving expenses by affidavit." Gunn v. McCoy , 554 S.W.3d 645, 672 (Tex. 2018). Section 18.001(b) provides:
Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.
TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b). By filing a controverting affidavit under section 18.001(f), a nonoffering party can prevent the use of an offering party's affidavit as evidence.
*826 Hong v. Bennett , 209 S.W.3d 795, 801 (Tex. App.-Fort Worth 2006, no pet.) ; TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(f).
Affidavits filed under section 18.001(b) are commonly used as evidence of the reasonableness and necessity of past medical expenses. Gunn , 554 S.W.3d at 672. Section 18.001 is "purely procedural," allowing "the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses." Id. (internal quotations omitted). "[S]ection 18.001(b) provides a limited exception to the general rule that expert testimony is required to prove reasonableness and necessity of medical expenses." Hong , 209 S.W.3d at 801.
Here, Day complains the trial court erred in awarding attorney's fees because the affidavits the Federation filed in support of its attorney's fees motion "do not qualify as section 18.001 affidavits." However, Day does not explain how the Federation's affidavits failed to qualify under section 18.001.[4] Additionally, Day fails to support his complaint with citation to legal authority.
The Texas Rules of Appellate Procedure require an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities." See TEX. R. APP. P. 38.1(i). To comply with Rule 38.1(i), an appellant's brief must provide "a discussion of the facts and the authorities relied upon to maintain the point at issue." Lowry v. Tarbox , 537 S.W.3d 599, 619 (Tex. App.-San Antonio 2017, pet. denied). In his brief, an appellant "must put forth some specific argument and analysis showing the record and the law support [his] contentions." Id. Without the required analysis and citation to legal authorities, an appellant's brief presents nothing for appellate review. Id. at 620. To the extent Day's brief fails to support his section 18.001 complaint with analysis and citation to legal authorities, it presents nothing for our review. See ids="12410594" index="69" url="https://cite.case.law/sw3d/537/599/#p619">id. (concluding issue presented nothing for review when the appellants' brief failed to provide any discussion of the evidence or the law).
But even if this complaint had been properly briefed and presented for our review, we would overrule it. While section 18.001 has been used for affidavits concerning attorney's fees, it is not the only procedure available. Other procedures have been used to submit affidavits in support of attorney's fees motions. See, e.g., RSL Funding, LLC v. Aegon Structured Settlements, Inc. , 384 S.W.3d 405, 410 (Tex. App.-Eastland 2012, pet. denied) (upholding the trial court's award of attorney's fees based on an uncontroverted attorney affidavit detailing the fees); Westcliffe, Inc. v. Bear Creek Constr., Ltd. , 105 S.W.3d 286, 294 (Tex. App.-Dallas 2003, pet. denied) (affirming award of attorney's fees when the trial court had taken judicial notice of an affidavit from the party's attorney);
*827 Strom v. Memorial Hermann Hosp. Sys. , 110 S.W.3d 216, 227 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (holding, in the context of a dismissal of a health care liability claim, that the trial court properly awarded attorney's fees based on an attorney's affidavit testimony). Here, the Federation did not state in its attorney's fees motion that it was relying on section 18.001. Furthermore, the Federation supported its attorney's fees motion with affidavits from two attorneys who had worked on the case and provided expert testimony regarding their fees. See RSL Funding , 384 S.W.3d at 410 (recognizing that an attorney's affidavit regarding her attorney's fees is considered expert opinion testimony that may be considered regarding the amount and reasonableness of those fees). We conclude the Federation was not required to submit affidavits that complied with section 18.001.
4. Reasonable and Necessary
Finally, Day complains that the record lacks sufficient proof that the attorney's fees awarded were "reasonable and necessary." Day further complains that the amount of attorney's fees awarded was "excessive" given the "narrow scope" of his lawsuit. "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.' " Sullivan , 488 S.W.3d at 299 (quoting Garcia v. Gomez , 319 S.W.3d 638, 642 (Tex. 2010) ). The determination of reasonable attorney's fees "rests within the [trial] court's sound discretion." Id.
Here, the Federation supported its motion for attorney's fees with two attorney affidavits supported by billing records. Even though Day filed a response to the motion for attorney's fees, Day did not submit a controverting affidavit, nor did he request additional time to file a controverting affidavit. The trial court awarded the amount of attorney's fees requested in the Federation's motion and accompanying affidavits and billing records.
To support his contention that the attorney's fees awarded were not reasonable, Day relies on McGibney v. Rauhauser , 549 S.W.3d 816 (Tex. App.-Fort Worth 2018, pet. denied). In McGibney , the trial court granted the defendant's motion to dismiss under the TCPA and awarded the defendant $ 300,383.84 in attorney's fees. Id. at 819. The court of appeals reversed, concluding the trial court erred by awarding the entire amount of attorney's fees requested by the defendant. Id. at 827. The record showed the defendant was not served in the case and that he knew, prior to moving for dismissal, that the plaintiffs were going to nonsuit the entire cause of action. Id. at 824. Additionally, the record showed that the defendant's billing entries were heavily redacted and included charges for work performed in another case. Id. at 821-25. The appellate court concluded that, even without a controverting affidavit, the trial court erred in awarding the entire amount requested because the charges contained in the defendant's affidavit were excessive as opposed to moderate or fair. Id. at 827.
None of the circumstances described in McGibney exist in the case before us. The Federation was served with Day's lawsuit and compelled to appear. The billing records contain virtually no redactions and do not include entries for work performed on another case. The billing entries show that the $ 83,292.50 the Federation incurred in attorney's fees was for the preparation and presentation of the Federation's motion to dismiss and other aspects of defending this lawsuit, including reviewing Day's pleadings, preparing an original answer, and responding to and engaging in discovery. We conclude the evidence was sufficient to support the trial court's finding that the attorney's fees requested were reasonable and necessary. Additionally, we conclude that the attorney's fees awarded in this *828 case are not excessive or extreme, but instead are moderate and fair. See Sullivan , 488 S.W.3d at 299. Therefore, we hold that the trial court did not abuse its discretion in awarding the Federation $ 83,292.50 in attorney's fees.
We overrule Day's fourth issue.
CONCLUSION
The trial court's judgment is affirmed.

SLAPP is an acronym for strategic lawsuit against public participation. KBMT Operating Co., LLC v. Toledo , 492 S.W.3d 710, 713 n.6 (Tex. 2016).

Day does not cite to any rules, statutes, or cases to support this argument.

Libel is "a defamation expressed in written or other graphic form." Tex. Civ. Prac. & Rem. Code Ann. § 73.001.

Day further asserts that the Federation did not comply with section 18.001(d), which provides: "The party offering the affidavit in evidence or the party's attorney must serve a copy of the affidavit on each other party to the case at least 30 days before the day on which evidence is first presented at the trial of the case." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(d). Even if we assume that the Federation's affidavits were not timely served under section 18.001(d), Day does not argue, much less demonstrate, that he was harmed by the timing of the affidavits. See Tex. R. App. P. 44.1(a) (providing that an appellate court cannot reverse the trial court's judgment unless it concludes the trial court's error probably caused the rendition of an improper judgment or prevented the presentation of the case on appeal). The record shows that Day filed a response to the attorney's fees motion, and the attorney's fees motion was not granted until after Day filed his response.