NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BMO HARRIS BANK NA, *Plaintiff/Appellee*,

*v.*

JAMES GALUSHA, *Defendant/Appellant*.

No. 1 CA-CV 19-0549
FILED 7-30-2020

Appeal from the Superior Court in Maricopa County
No. CV 2018-013234
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Moyes Sellers & Hendricks LTD, Phoenix
By Cody J. Jess
*Counsel for Defendant/Appellant*

Quarles & Brady LLP, Phoenix
By Isaac M. Gabriel
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig[1] joined.

---

**B R O W N**, Judge:

¶1        James Galusha appeals the superior court's judgment awarding contractual damages, interest, late charges, attorneys' fees, and costs to BMO Harris Bank ("BMO").  Galusha challenges only the fee award.  For the following reasons, we affirm.

### BACKGROUND

¶2        In June 2017, Silverado Stages, Inc. ("Silverado"), a transportation company in which Galusha and his wife were the majority shareholders, obtained a loan from BMO in the amount of $1,290,000 ("the Loan").  The Loan was secured in part by three 2017 Volvo buses.  Galusha also executed a continuing personal guaranty ("the Guaranty"), agreeing that if Silverado failed to pay the Loan as it became due he would "pay on demand the entire indebtedness and all losses, costs, attorneys' fees and expenses . . . suffered by [BMO] by reason of [Silverado]'s default."

¶3        Silverado defaulted on the Loan.  In October 2018, BMO filed a complaint against Galusha in superior court for breach of the Guaranty, and Silverado filed a Chapter 11 bankruptcy petition in federal district court, which Galusha signed as Silverado's chairman.[2]  BMO filed a motion for summary judgment in the superior court action, followed by an amended motion.  After oral argument, the superior court granted the motion, with the exception of a prepayment penalty fee.

---

[1]        Judge David D. Weinzweig replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge Weinzweig has read the briefs and reviewed the record.

[2]        Before filing its bankruptcy petition, Silverado refused to surrender the buses and BMO's counsel worked on preparing a state court lawsuit and replevin action to recover them.  Silverado later stipulated to relief from the bankruptcy stay so BMO could repossess the buses, and it did so.

¶4          BMO filed an application for an award of attorneys' fees, seeking $88,069.85 in fees and $7,637.54 in costs, citing Arizona law. Galusha objected, arguing the reasonableness of BMO's fees should be determined by Texas law and capped at $40,471.30.  The superior court awarded BMO all of its requested attorneys' fees, explaining that "[w]hile [Galusha] is correct that these fees are high for the nature of this dispute, the Court does not believe the reason [BMO] incurred these abnormally high fees can be laid at [BMO]'s doorstep."  Galusha timely appealed.

## DISCUSSION

¶5          Galusha first argues the superior court committed reversible error by applying Arizona law rather than Texas law when considering BMO's fee application.

¶6          We review an award for attorneys' fees for an abuse of discretion but review de novo "issues of law, such as . . . a superior court's legal authority to use a specific method for determining attorneys' fees." *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006).  Texas law also applies an abuse of discretion standard for review of an award of attorneys' fees. *Chappell Hill Bank v. Smith*, 257 S.W.3d 320, 325 (Tex. App. 2008).  "To find an abuse of discretion, there must either be no evidence to support the superior court's conclusion or the reasons given by the court must be clearly untenable, legally incorrect, or amount to a denial of justice." *Charles I. Friedman, P.C.*, 213 Ariz. at 350, ¶ 17 (citations omitted). We review the record in the light most favorable to upholding the court's decision and will not disturb the award if there is any reasonable basis for it. *In re Indenture of Trust Dated January 13, 1964*, 235 Ariz. 40, 51, ¶ 41 (App. 2014).

¶7          Galusha argues that because both parties relied upon Texas law in their summary judgment briefing and the superior court noted in its summary judgment ruling that the parties had previously agreed the substantive law of Texas would apply, the court was required to apply Texas law in considering the fee application, and nothing in the court's ruling suggests it did so.  He acknowledges that both Arizona and Texas generally limit the recovery of attorneys' fees to those reasonably incurred, but argues that "Texas applies a more exacting standard in making the reasonableness determination."  BMO does not dispute that Texas law was applicable but argues nothing indicates the court failed to apply Texas law. Although the court did not specify which law it applied when awarding attorneys' fees, we presume the court was aware Texas substantive law governed the parties' dispute and correctly applied that law in evaluating

3

BMO's fee request. *See State v. Moody*, 208 Ariz. 424, 444, ¶ 53 (2004) ("We presume that a court is aware of the relevant law and applies it correctly in arriving at its rulings."); *State Nat. Bank v. Academia, Inc.*, 802 S.W.2d 282, 290 (Tex. App. 1990) (applying the presumption that "the trial court . . . applied the correct law according to the established choice of law principles").[3]

**¶8**        Galusha also argues the superior court abused its discretion because BMO's fees were excessive, duplicative, and included time spent pursuing unsuccessful claims. In Texas, "each party generally must pay its own way in attorney's fees." *Rohrmoos*, 578 S.W.3d at 483. "When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Id.* at 484. Texas applies the lodestar method for making those determinations. *Id.* at 500–01.

> [T]he determination of what constitutes a reasonable attorneys' fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder]

---

[3]        Galusha concedes that "courts applying either Arizona or Texas law consider similar factors when deciding an appropriate fee award." *Cf. Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019); *Schweiger v. China Doll Rest. Inc.*, 138 Ariz. 183, 187–88 (App. 1983). Nevertheless, he argues that Texas, unlike Arizona, requires expert testimony to prove the reasonableness and necessity of requested fees. Galusha did not challenge the purported absence of expert testimony in his objection to BMO's attorneys' fees application and therefore waived that argument on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994). Moreover, an attorney's affidavit may satisfy this requirement. *See Day v. Fed'n of State Med. Bds. of the U.S., Inc.*, 579 S.W.3d 810, 826–27 (Tex. App. 2019); *RSL Funding, LLC v. Aegon Structured Settlements, Inc.*, 384 S.W.3d 405, 410 (Tex. App. 2012). Here, the sworn affidavit of BMO's attorney, James L. Ugalde, supported by detailed billing records, offered sufficient expert testimony to sustain the award. Galusha also argues that unlike Arizona, in Texas "reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney." *Rohrmoos*, 578 S.W.3d at 498. However, Arizona law also requires a party seeking fees to provide evidence of reasonableness. *See Crews v. Collins*, 140 Ariz. 80, 82 (App. 1984) (citing *China Doll*, 138 Ariz. at 188). Regardless, we presume the superior court followed Texas law. *Moody*, 208 Ariz. at 444, ¶ 53; *State Nat. Bank*, 802 S.W.2d at 290.

then multiplies the number of such hours by the applicable rate, the product of which is the base . . . lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id.* at 501 (citation omitted). The base lodestar figure is presumptively reasonable. *See id.* at 501; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (recognizing "there is a 'strong presumption' that the base lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.").

**¶9**　　　　"General, conclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos*, 578 S.W.3d at 501. A claimant seeking an attorneys' fees award must present sufficient evidence to support the fee award. *Id.* at 502. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Contemporaneous billing records, although not required, are strongly encouraged to prove the reasonableness and necessity of the requested fees. *Id.* "When the record includes evidence that is adequate to address the five factors outlined above, trial courts may presume the multiplication step of the analysis has produced a figure that reflects a presumptively reasonable fee." *Toledo v. KBMT Operating Co., LLC*, 581 S.W.3d 324, 329 (Tex. App. 2019).

**¶10**　　　　Here, BMO supported its application for attorneys' fees with Ugalde's affidavit, which was supported by detailed billing records. The superior court awarded BMO the amount requested in its application and accompanying affidavit, $88,069.85, which was based upon 202.4 hours of legal work performed by Quarles and Brady's attorneys and paralegals. Galusha therefore had the burden of proving a reduction in the base lodestar figure of $88,069.85 was appropriate by providing specific evidence to overcome its presumptive reasonableness. *See Rohrmoos*, 578 S.W.3d at 501. The legal work provided by BMO's attorneys included the preparation and litigation of the lawsuit, including attempts to resolve various issues that Galusha opposed. It also included time spent in connection with BMO's efforts to recover its collateral and its participation

in Silverado's bankruptcy.[4]   The billing records and affidavit provide evidence of the particular services performed and who performed those services, when the services were performed and the amount of time required to perform them, as well as the hourly rates for each person performing services.  *See id.* at 502.  This evidence supports the court's decision to award BMO its requested fees, and Galusha has not demonstrated that any duplicated effort was per se unreasonable or the overall award was excessive.  *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (citation omitted) ("A reasonable attorney[s'] fee is one that is not excessive or extreme, but rather moderate or fair.").

**¶11**      Galusha also argues the superior court abused its discretion because BMO provided insufficient evidence to support the reasonableness of the attorneys' hourly rates.  Given the experience and qualification of the attorneys, as outlined in Ugalde's affidavit together with his avowal that the rates charged by Quarles and Brady "are consistent with, if not lower than, the rates charged by comparable law firms," we have no basis to conclude the court should have reduced the base lodestar figure due to unreasonably high hourly rates.[5]

**¶12**      In sum, the superior court held hearings and was familiar with the legal positions taken by each party throughout the litigation, including whether such proffered positions appropriately and reasonably created the need for attorneys' fees that may not have otherwise been required.  Thus, the court was in the best position to evaluate the affidavit, billing records, hourly rates charged, and services provided in evaluating the reasonableness and necessity of BMO's attorneys' fees.  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (award of attorneys' fees generally left to the trial court's sound discretion); *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App. 2014) (citation omitted) ("Trial judges can

---

[4]      Galusha argues that BMO "abandoned" its replevin claim and therefore could not recover fees on that claim.  But BMO could not pursue its replevin efforts because Silverado filed for bankruptcy before BMO could move for replevin.  Fees incurred in connection with the replevin were reasonable.

[5]      We are not persuaded by Galusha's assertion that Ugalde's statement about the hourly rates being consistent with those of other law firms is insufficient as a matter of law.  Nor do we find persuasive Galusha's contention that a 2016 attorney survey listing median hourly rates in Arizona necessarily demonstrates the unreasonableness of the hourly rates charged by BMO's attorneys in this case.

draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees."). We conclude the court did not abuse its discretion in awarding BMO its requested attorneys' fees; the record supports the court's implicit finding that the fees were reasonable and necessary.

**CONCLUSION**

**¶13**       We affirm the superior court's judgment. Both sides request attorneys' fees and costs on appeal pursuant to the Guaranty and Texas Civil Practice and Remedies Code § 38.001. We award BMO reasonable attorneys' fees incurred in defending this appeal, together with taxable costs, subject to compliance with ARCAP 21. However, we deny BMO's request for fees relating to post-judgment discovery and related matters incurred in the superior court proceedings.



AMY M. WOOD • Clerk of the Court
FILED:   AA

7