# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00846-CV

---

### Kerrie Dietrich and Edgar Dietrich, Appellants

### v.

### Christopher Chambers, II and Wife, Alysha Dawn O'Leary, Individually and as Next Friend of their minor child, C.O.C., Appellees

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. C2018-1568B, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the trial court's denial of a motion to dismiss brought under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code § 27.001–.011.[1] Christopher Chambers II and his wife Alysha Dawn O'Leary, individually and as next friend of their minor child C.O.C., sued Kerrie and Edward Dietrich for defamation based on alleged statements that the Dietrichs made accusing Chambers and his son, C.O.C., of sexual misconduct. For the reasons stated below, we affirm the trial court's order.

---

[1] The Legislature amended the TCPA in 2019, but those changes do not apply here because this action was filed before the effective date of the amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Sess. Law Serv. 684, 687 (specifying that TCPA amendments apply only to action filed on or after September 1, 2019). All citations to the TCPA in this opinion are to the version that applies to this dispute.

# BACKGROUND

In October 2017, Chambers' and O'Leary's daughter, A.C., told Kerrie Dietrich that A.C.'s brother, C.O.C., had sexually abused her. Kerrie Dietrich approached Chambers and O'Leary about A.C.'s outcry statement,[2] but when they refused to discuss the matter with her, she told A.C. to report the alleged sexual abuse to someone at Morningside Elementary. The school notified Child Protective Services (CPS) and told Kerrie Dietrich that she should contact CPS, which she did. CPS investigated the allegations and ultimately, in December 2017, concluded that the alleged abuse or neglect did not occur and that CPS intervention was unwarranted.

The Dietrichs contend that soon after CPS was notified, Chambers began filming the Dietrichs' daughter and other children outside Morningside Elementary. They also allege that on one occasion Chambers followed and filmed the Dietrichs' daughter while she walked home from school.

Chambers and O'Leary assert that, beginning the same month that A.C. made the outcry statement, Kerrie Dietrich "spread stories and rumors alleging sexual misconduct and abuse by [Chambers and C.O.C.] to neighbors and other residents of Comal County." They also allege that on May 24, 2018, and again on June 25, 2018, the Dietrichs distributed to their neighbors a document accusing Chambers and C.O.C. of sexual misconduct:

> It's come to my attention, of our children's school and neighborhood parents, that our minor children are being targeted by one local man and his son for sexual misconduct to all our neighborhood children. Kids are being followed and videotaped to and from Morningside Elementary School. Please Be aware and

---

[2] An "outcry statement" is a child's statement to a witness that describes alleged abuse of the child. *See Simms v. State*, 12 S.W.3d 499, 500 (Tex. Crim. App. 1999).

2

talk to your children about this horrible abuse by 2 residents Christopher Sr. and [C.O.C.]—[Chambers' street address].  Thanks again! Homeowner Association.

(Errors in original.)  The Dietrichs deny any involvement with the creation or distribution of this or any other neighborhood flyer.

Chambers and O'Leary sued the Dietrichs for libel, slander, and defamation per se.  Their claims are premised on the Dietrichs' alleged participation in drafting and distributing the neighborhood flyer and on Kerrie Dietrich's alleged oral statements to neighbors and other residents of Comal County (collectively, "neighbors") accusing Chambers and C.O.C. of sexual misconduct and abuse.  The Dietrichs generally denied the allegations and asserted statutory immunity and qualified privilege as defenses to the claims against them.

The Dietrichs also filed a motion seeking to dismiss the claims against them under the TCPA because the claims are "based on, relate[] to, or [are] in response to" the Dietrichs' "exercise of the right of free speech [and] petition."  *Id.* §§ 27.003, .005.  Specifically, the Dietrichs asserted that the claims "relate to an activity generally protected under the federal Constitution and Texas constitution—reports to CPS and the police, and for which Defendants are granted both immunity to civil liability and a privilege under state law."  In support of their TCPA motion to dismiss, the Dietrichs offered their own affidavits.  Chambers and O'Leary objected to several statements in the Dietrichs' affidavits.  The trial court sustained objections to the Dietrichs' affidavits and thereafter denied the motion to dismiss on the grounds that Chambers and O'Leary "established by clear and convincing evidence a prima facie case for each essential element of the claims" and that the Dietrichs "have not established by a preponderance of the evidence each essential element of a valid defense to the . . . claims."  This interlocutory appeal ensued.

3

## TCPA

The TCPA establishes a three-step process. First, the moving party must show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [moving party's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b). Next, the burden shifts to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). "Clear and specific evidence" means that the plaintiff "must provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding). If the plaintiff satisfies this burden, the defendant may still obtain dismissal by "establish[ing] by a preponderance of the evidence each essential element of a valid defense" to the claim. Tex. Civ. Prac. & Rem. Code § 27.005(d). When considering the motion to dismiss, the court considers both the pleadings and any supporting and opposing affidavits. *Id*. § 27.006(a). We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

## ANALYSIS

The Dietrichs raise three issues on appeal. Their first issue challenges the trial court's exclusion of Kerrie Dietrich's affidavit testimony. Their second and third issues, taken together, ask us to analyze the defamation claim asserted against them under the TCPA's burden-shifting process to determine whether the district court properly denied the Dietrichs' motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 27.005. Specifically, because the parties do not dispute that the TCPA applies to the defamation claim, we are asked to decide whether

Chambers and O'Leary presented a prima facie case for each essential element of their defamation claim and, if so, whether the Dietrichs established the essential elements of a valid defense to that claim.

**Exclusion of evidence**

In her affidavit offered in support of the Dietrichs' motion to dismiss, Kerrie Dietrich stated, "In October 2017, when [A.C.], who was nine years old at the time, was in my home, she confided in me that her older brother, [C.O.C.] (who was ten years old at the time), had been sexually abusing her." The trial court excluded this statement as hearsay. On appeal, the Dietrichs argue that the trial court erred in excluding this statement as hearsay because it was offered to prove the effect of the outcry statement on the Dietrichs rather than for the truth of the matter asserted. *See* Tex. R. Evid. 801(d) (defining "hearsay" as an out-of-court statement by the declarant offered "to prove the truth of the matter asserted in the statement").

We review a trial court's exclusion of evidence for an abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018). But even if we assume, for purposes of this decision, that the statement is admissible under the Texas Rules of Evidence and that the trial court erred in not admitting it, the Dietrichs must show that the error was harmful. *See id.* The erroneous exclusion of evidence is harmful if it "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1; *see Gunn*, 554 S.W.3d at 668. Exclusion is likely harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Gunn*, 554 S.W.3d at 668; *see Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994) ("An error in the exclusion of evidence requires reversal if it is both controlling on a material issue and not cumulative.").

5

Here, the trial court's exclusion of Kerrie Dietrich's statement was harmless because Chambers and O'Leary do not dispute, and in fact acknowledge, that A.C. made the outcry statement to Kerrie Dietrich. Specifically, in the affidavits attached to their response to the Dietrichs' TCPA motion to dismiss, both Chambers and O'Leary state:

> Our daughter [A.C.] . . . reportedly made a comment when she was only about 8 years of age that her brother . . . would rape her every night, thinking that "rape" meant that you force someone to do something they don't want to do. This all arose over our daughter's misunderstanding of what the word "rape" means.

O'Leary also states in her affidavit, "[The Dietrich's daughter] and one other student reported what [A.C.] had said to the school." Finally, Christine Perdue, a neighbor of Kerrie Dietrich, testified in another affidavit that "Ms. Dietrich indicated to me that [A.C.] had told Ms. Dietrich that she had been sexually assaulted by her father and brother." This evidence establishes the same information as the excluded evidence. Accordingly, we hold that even if the trial court erred in excluding Kerrie Dietrich's testimony, such error did not cause the rendition of an improper judgment.

We overrule the Dietrichs' first issue and turn to the Dietrichs' challenge to the trial court's denial of their TCPA motion to dismiss.

**Prima facie case**

In their second issue, the Dietrichs assert that the trial court erred in denying their motion to dismiss the defamation claim asserted against them because Chambers and O'Leary failed to establish a prima facie case for each essential element of that claim—the second step in a TCPA analysis. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). The elements of a defamation claim are: (1) publication of a false statement of fact to a third party, (2) that was defamatory

6

concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, unless the statement is defamatory per se. *Lipsky*, 460 S.W.3d at 593.

*Publication of a false statement of fact to a third party*

A statement is "published" when it is communicated orally or in writing to a third person who is capable of understanding its defamatory meaning in such a way that the person did understand its defamatory meaning. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). A publication is false if it "is not substantially true." *Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013). A publication is not substantially true if, taken as a whole, it is more damaging to the plaintiff's reputation than a truthful publication would have been. *Id.*

Chambers and O'Leary's live petition alleges, with respect to this element of their defamation claim, that the Dietrichs, both orally and by distributing the neighborhood flyer, spread to their neighbors false stories and rumors that Chambers and C.O.C. had engaged in sexual misconduct and abuse:

- "[Kerrie Dietrich] distributed or caused to be distributed, notices in writing to residents of Comal County, Texas, accusing [Chambers] and [C.O.C.] of sexual misconduct and abuse."

- "Defendants have verbally [sic] spread stories and rumors alleging sexual misconduct and abuse by said Plaintiffs to neighbors and other residents of Comal County, Texas and have encouraged, aided and abetted in said activities."

In support of their response to the Dietrichs' motion to dismiss, Chambers and O'Leary attached copies of CPS's investigation report and copies of the neighborhood flyer that the Dietrichs allegedly circulated to neighbors. Chambers and O'Leary also provided their own affidavits and the affidavit of Christine Perdue. According to O'Leary's affidavit, the CPS investigation into the sexual-misconduct and abuse allegations "resulted in a finding of innocence of all our

family"; that "Kerrie Dietrich was spreading sexual stories and rumors, all false and without foundation, in the neighborhood about [Chambers and C.O.C.], and in so many words that they were sexual predators"; Kerrie Dietrich admitted to "our neighbor, Christine Perdue, that she" distributed the neighborhood flyer to neighbors; and Kerrie Dietrich made "slanderous statements about our son [C.O.C.] to neighbor Christine Perdue and to other children in the neighborhood . . . that our son [C.O.C.] was a rapist."  Chambers testified in his affidavit that he "had not committed any sexual misconduct or abuse, horrible or otherwise, and neither has my wife [O'Leary] or our son [C.O.C.]"; and Kerrie Dietrich made "slanderous statements about our son [C.O.C.] to neighbor Christine Perdue and to other children in the neighborhood . . . that our son [C.O.C.] was a rapist."  Finally, Christine Perdue testified in her affidavit that Kerri Dietrich said "bad things about the Chambers family," including statements that "Mr. Christopher Chambers and his son [C.O.C.]. . . were sexually molesting their daughter [A.C.]"; that Kerrie Dietrich "circulat[ed] the flyer"; that "Kerrie Dietrich was going to people's homes in the neighborhood and posting this information about sexual molestation either by depositing them in the mail box or attaching them to people's doors in the neighborhood"; and that Kerrie Dietrich later "apologized to some of the neighbors about what she had been saying about [Chambers and C.O.C.]."

The Dietrichs do not challenge the falsity of alleged statements accusing Chambers and C.O.C. of being rapists or sexual predators.  Instead, they focus on the truthfulness of their alleged communications to CPS and others about the outcry statement—i.e., that those communications were not false because A.C. did, in fact, make the outcry statement. But, as explained above, the defamation claims against the Dietrichs are not based on their

8

communications about the outcry statement or the fact that it was made, but on their alleged statements to others that Chambers and C.O.C. were sexual predators and rapists.

The Dietrichs also argue that Chambers and O'Leary did not meet their TCPA burden because the evidence does not establish that anyone "actually witnessed" the distribution of the letter. The clear-and-specific standard cannot be met, the Dietrichs argue, unless there is evidence of someone witnessing distribution of the flyer. We take this to be a challenge to the "publication" aspect of this element. However, "publication" simply requires communication of a defamatory statement to a third person. *See Exxon Mobil*, 520 S.W.3d at 579; *Publish*, *Black's Law Dictionary* (10th ed. 2014) ("To communicate (defamatory words) to someone other than the person defamed."). And here, as set out above, Perdue testified that Kerrie Dietrich made statements to Perdue and in the presence of other neighbors that Chambers and C.O.C. were sexually abusing A.C.. She, Chambers, and O'Leary also testified that the Dietrichs distributed to their neighbors the flyers accusing Chambers and C.O.C. of sexual misconduct.

We hold that, with respect to the publication-of-a-false-statement element of their defamation claim, the evidence satisfies Chambers's and O'Leary's evidentiary burden under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

*Defamatory concerning the Chambers family*

Under Texas law, a statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Id.* § 73.001 (elements of libel); *see Bentley v. Bunton*, 94 S.W.3d 561, 587 (Tex. 2002) (explaining that a defamatory statement is "injurious to reputation"). Whether a statement is defamatory is a

9

question of law for the court. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987). For this determination, we construe the statement as a whole in light of surrounding circumstances, based on how a reasonable person would perceive the entire statement. *Lipsky*, 460 S.W.3d at 594.

O'Leary testified in her affidavit that "both before and after CPS cleared the Chambers family, Kerrie Dietrich was spreading sexual stories and rumors, all false and without foundation, in the neighborhood about my husband, [Chambers], and son, [C.O.C.], . . . and in so many words that they were sexual predators." Both O'Leary and Chambers testified that "Kerrie Dietrich ma[de] slanderous statements about our son [C.O.C.] to neighbor Christine Perdue and to other children in the neighborhood on or about November 2017 and that our son [C.O.C.] was a rapist." Likewise, Perdue testified in her affidavit that Kerrie Dietrich "made statements to me to the effect that Mr. Christopher Chambers and his son [C.O.C.], were sexually molesting their daughter [A.C.]." Finally, the neighborhood flyer that the Dietrichs allegedly distributed accused Chambers and C.O.C. of targeting minor children "for sexual misconduct."

The statements ascribed to the Dietrichs accuse Chambers and C.O.C. of sexual misconduct, abuse, and rape of a minor, and also of targeting other minors for sexual misconduct and abuse. Accusing someone of a crime or of engaging in serious sexual misconduct is defamatory. *Id.* at 596 ("Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se."). Therefore, Chambers and O'Leary's evidence satisfies their burden with respect to this element of their defamation claim.

10

*Requisite degree of fault*

Because Chambers and O'Leary are private individuals, they must show that the defamatory statements were negligently published. *See id.* at 593. For the purposes of defamation liability, negligence is established upon a showing the publisher knew or should have known that the defamatory statement was false. *Neely*, 418 S.W.3d at 72. Texas courts have also described this as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person. *See, e.g., Day v. Federation of State Med. Bds. of the U.S., Inc.*, 579 S.W.3d 810, 822 (Tex. App.—San Antonio 2019, pet. denied).

As noted, Chambers and O'Leary provided the trial court with the December 26, 2017 CPS investigation report, which concluded that A.C. had not been sexually abused, physically abused, or neglected, and that intervention by CPS was unwarranted. Chambers and O'Leary both testified in their respective affidavits that CPS's report was furnished to the Dietrichs, with O'Leary further explaining that the Dietrichs "were fully informed that no crime or improper or inappropriate sexual activity had taken place involving any member of the Chambers family." O'Leary also testified that Kerrie Dietrich made the oral defamatory statements about Chambers and C.O.C. both before and after CPS's investigation was complete and that Kerrie Dietrich distributed the neighborhood flyer accusing Chambers and C.O.C. of sexual misconduct in May and June of 2018, months after the CPS investigation concluded. Finally, Chambers and O'Leary both testified that Chambers and C.O.C. did not sexually abuse A.C..

The Dietrichs do not challenge CPS's conclusions or the assertions that the Dietrichs were aware of CPS's conclusions. Nor do they argue that the alleged statements that

11

Chambers and C.O.C. are rapists and sexual predators are true statements. Instead, they argue that they could not have been negligent as to falsity when they reported the outcry statement because A.C. did, in fact, make the outcry statement and because Texas law makes it obligatory to report outcry statements to an appropriate agency, including CPS. *See* Tex. Fam. Code §§ 261.101–.102. But again, the defamation claims against them are premised on the alleged oral and written statements made to neighbors, not on Kerrie Dietrich's report of the outcry statement.

We hold that, with respect to the requisite degree of fault, the evidence satisfies Chambers's and O'Leary's evidentiary burden under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

### *Damages*

The Dietrichs do not challenge the damages element. But even if they had, statements accusing someone of a crime is defamation per se for which evidence of damages is not required. *See Lipsky*, 460 S.W.3d at 595–96.

In sum, we hold that Chambers and O'Leary have established by clear and specific evidence a prima facie case for each essential element of their defamation claim. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Lipsky*, 460 S.W.3d at 591 ("In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss."). Accordingly, we overrule the Dietrichs' second issue.

12

**Dietrichs' affirmative defenses**

In their final issue (and the third step of our TCPA analysis), the Dietrichs assert that they were entitled to dismissal under the TCPA because they established the affirmative defenses of statutory immunity, qualified privilege, and truth or substantial truth. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d) (requiring court to "dismiss legal action . . . if moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim").

*Statutory immunity*

The Family Code requires that outcry statements be reported to an appropriate authority. *See* Tex. Fam. Code § 261.101–.102. Further, the Family Code grants immunity to any person who, in good faith, makes such a report:

> A person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is immune from civil or criminal liability that might otherwise be incurred or imposed.

*Id*. § 261.106(a). On appeal, the Dietrichs assert that they established their entitlement to statutory immunity under section 261.106(a) and, therefore, the trial court should have dismissed the claims "relating to [the Dietrichs'] report of child abuse to the authorities." But as explained above, the claims against them are not premised on the report of the outcry statement to CPS or a judicial proceeding arising from such a report. Thus, even assuming they have met all of its requirements, section 261.106's grant of immunity would not protect the Dietrichs here because this litigation concerns alleged statements made to neighbors, not statements made to assist in an

13

investigation of alleged child abuse. *See In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at \*18 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) ("[T]he legislature intended to protect reporters of child abuse from *liability for the act of reporting the abuse itself*, not from civil or criminal liability generally." (citing *State v. Harrod*, 81 S.W.3d 904, 908 (Tex. App.—Dallas 2002, pet. ref'd)).

*Qualified privilege*

Qualified privilege is an affirmative defense to a defamation claim. *See, e.g.*, *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014). To be entitled to qualified privilege, the defendant's statement must: (1) be made without actual malice (i.e., in good faith), (2) concern a subject matter that is of sufficient interest to the author or is in reference to a duty the author owes, and (3) be communicated to another party having a corresponding interest or duty. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994). A statement is made without actual malice if it is made without knowledge of its falsity and without reckless disregard for its truth. See *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *see also Lipsky*, 460 S.W.3d at 593 (discussing actual malice in context of defamation elements). On appeal, the Dietrichs assert that they established, by a preponderance of the evidence, the essential elements of qualified privilege with respect to their alleged communications to their neighbors.

The Dietrichs asserted in their live pleadings that they are entitled to the affirmative defense of qualified privilege "because a communication of an alleged wrongful act *made to an official authorized to protect the public from the act* is protected by a qualified privilege." (Emphasis added.) The Dietrichs did not invoke this defense in connection with the alleged oral and written statements to neighbors that form the basis of the claims against them.

14

Likewise, the Dietrichs' motion to dismiss raises this defense only with respect to their "communication of an alleged wrongful act made to an official authorized to protect the public." And on appeal, the Dietrichs emphasize evidence showing that A.C. made an outcry statement to them that they believed to be true.

But even if we assume that the Dietrichs properly raised qualified privilege as a defense to their alleged communications to neighbors, the Dietrichs have not established by a preponderance of the evidence the without-actual-malice element of the qualified-immunity defense for reasons similar to those in our analysis of the requisite-degree-of-fault element of a defamation claim. Chambers and O'Leary alleged, and supported with evidence, that the Dietrichs made defamatory statements about Chambers and C.O.C. both before and after learning of CPS's conclusion that A.C. had not been abused. The Dietrichs did not deny these assertions or contradict the supporting evidence, and they did not provide any evidence, or even allege, that they were not aware of the results of CPS's investigation when they allegedly told neighbors that Chambers and C.O.C. had engaged in sexual misconduct. Further, the Dietrichs do not contend that the alleged statements to their neighbors are true. Instead, they assert only that A.C. made an outcry statement to them that they believed to be true. As such, the Dietrichs did not establish by a preponderance of the evidence that they made the alleged post-CPS investigation statements—i.e., the statements to neighbors that Chambers and C.O.C. are sexual predators—without knowledge of their falsity and without reckless disregard for the truth. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d) (burden for establishing defenses); *Randall's*, 891 S.W.2d at 646 (actual-malice standard).

The Dietrichs also contend they established the without-actual-malice element because they state in their affidavits, and Chambers and O'Leary do not dispute, that Chambers

15

filmed children at Morningside Elementary.  But evidence that Chambers filmed children at an elementary school does not establish that Chambers and C.O.C. are sexual predators or that they sexually abused A.C..  By extension and in light of the TCPA evidence establishing when the Dietrichs knew the results of CPS's investigation, this evidence does not support the without-actual-malice element of the true defense—i.e., that the Dietrichs made statements accusing Chambers and C.O.C. of sexual misconduct without knowledge of falsity and without reckless disregard for the truth.

In sum, the Dietrichs did not meet their burden of establishing by a preponderance of the evidence the without-actual-malice element of their qualified-privilege defense. Accordingly, the trial court did not err in denying their motion to dismiss as to this defense.  *See* Tex. Civ. Prac. & Rem. Code § 27.005(d).

*Truth*

Truth is a defense to a defamation claim.  *Neely*, 418 S.W.3d at 62 (citing Tex. Civ. Prac. & Rem. Code § 73.005).  The Dietrichs contend on appeal that it was error for the trial court to deny their motion to dismiss because they established by a preponderance of the evidence the essential elements of the defense of truth.  The Dietrichs, however, did not invoke this defense in their answer and, more importantly, did not raise it as a ground for granting their motion to dismiss.  As such, the trial court could not have rejected it in denying their motion to dismiss.  Therefore, this issue is not properly within the limited scope of this interlocutory appeal. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *4 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.) (citing Tex. R. App. P. 33.1(a)(1)).  And even if they had raised the truth defense as a ground for dismissal, the

16

Dietrichs do not contend that their alleged statements about Chambers and C.O.C. were true, and the evidence in the record does not establish by a preponderance of the evidence that Chambers and C.O.C. engaged in sexual misconduct.

We overrule the Dietrichs' third issue.

## Conclusion

Having overruled the Dietrichs' issues, we affirm the trial court's judgment.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   October 28, 2020