

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00060-CV

Christie Lynn **TERRELL**,
Appellant

v.

Rashin **MAZAHERI**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-06326
Honorable Sid L. Harle, Judge Presiding[1]

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 22, 2023

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED

Christie Lynn Terrell appeals from the trial court's interlocutory order denying her motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"). At issue in this appeal is whether the TCPA applies to specific allegations of defamation brought by Appellee Rashin Mazaheri, and if so, whether Mazaheri has clear and specific evidence to support her claims for defamation. As explained below, we affirm the trial court's order as to some of Mazaheri's claims,

---

[1]Sitting by assignment

reverse and render a dismissal as to another, and remand for a determination of attorney's fees and costs as to the dismissed claim.

## BACKGROUND

The underlying dispute between the parties arises from a divorce proceeding involving Terrell and her former husband Matthew Duke. Mazaheri was Duke's attorney in the divorce proceeding.

Terrell and Duke's child was born in January 2018, and they married shortly thereafter in June 2018. Three months later, Terrell filed for divorce. On April 11, 2019, Terrell nonsuited her petition for divorce. Early in the morning on April 25, 2019, there was incident between Terrell and Duke. Duke left with their infant child. Terrell called the police, but no action was taken by them. Later that day, Duke re-engaged Mazaheri as his attorney. On April 29, 2019, Mazaheri filed a petition for divorce on Duke's behalf and obtained an ex parte temporary restraining order ("TRO") against Terrell, attaching Duke's affidavit as evidence in support of the TRO.[2] In October 2019, all pending suits for divorce between Terrell and Duke were nonsuited as they tried to reconcile. On January 29, 2020, a second incident occurred between Terrell and Duke. Terrell again called the police, but no action was taken. On February 3, 2020, Duke filed another petition for divorce, with Mazaheri representing him.

On December 6, 2020 and February 7, 2021, Terrell published two Facebook posts that are the subject of the underlying suit. In the first one, she accused Mazaheri of "fool[ing] around with [Terrell's] husband." In the second post, she accused Duke of "hiding" their child and Mazaheri of acting as his "accomplice." She further accused Mazaheri of "attempting to set hearings with the court clerk without [her] or [her] attorney's knowledge."

---

[2]Terrell had filed her own petition for divorce on April 25, 2019.

On April 1, 2021, Terrell filed a pro se motion to disqualify Mazaheri as Duke's counsel in the divorce proceeding. That same day, Mazaheri sued Terrell for defamation in the underlying cause. On May 24, 2021, Terrell's motion to disqualify Mazaheri in the divorce proceeding was denied. On July 29, 2021, Terrell was served with Mazaheri's defamation petition.

On September 22, 2021, Terrell filed a motion to dismiss Mazaheri's claims pursuant to the TCPA. In response, Mazaheri filed a motion to permit discovery related to the TCPA motion. On October 19, 2021, the trial court granted Mazaheri's motion and ordered limited discovery related to the TCPA motion, including depositions. Terrell's motion to dismiss pursuant to the TCPA was set for a hearing on December 29, 2021. However, at the hearing, the presiding judge reset the motion, explaining there was no available judge (who was not recused) to hear Terrell's motion. The presiding judge advised the parties in the future "to inform the staff attorney's office" as soon as practicable of any hearings in the case so that the staff attorney's office "may inform the judges, so we may more adequately be prepared for your appearance and ensure that there is a judge available to assist you on those days." On January 13, 2022, a visiting judge sitting by assignment denied Terrell's motion to dismiss pursuant to the TCPA. Terrell appealed.

## RESETTING THE HEARING

On appeal, Terrell first argues the trial court abused its discretion in resetting the hearing on her motion to dismiss. She emphasizes that both parties announced ready at the setting on December 29, 2021, and neither party moved for a continuance of the hearing. She further stresses that she objected to Mazaheri's "ability to file additional responses" to the TCPA motion to dismiss.

> As a general rule, a hearing on a TCPA motion to dismiss
>
> must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more

than 90 days after service of the [TCPA] motion [to dismiss], except as provided by Subsection (c).

TEX. CIV. PRAC. & REM. CODE § 27.004(a). Subsection (c), in turn, allows the trial court to extend the deadline for the hearing if it has allowed limited discovery pursuant to section 27.006(b). *See id*. § 27.006(b) (permitting the trial court to allow "specified and limited discovery relevant to the [TCPA] motion" to dismiss). Specifically, subsection (c) provides that if a trial court "allows discovery under Section 27.006(b), [it] may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003." *Id*. § 27.004(c).

Here, the trial court ordered limited discovery relevant to the TCPA motion. Thus, pursuant to section 27.006(b), it had discretion to extend the hearing date on the TCPA motion to 120 days after service of the TCPA motion. The clerk's record reflects that Mazaheri was served with Terrell's TCPA motion on September 22, 2021. The hearing was ultimately held on January 13, 2022, which is less than 120 days after the date of service of the TCPA motion. Further, the record reflects the hearing was reset because of the inability to locate an available judge not already recused. Accordingly, we find no abuse of discretion by the trial court in resetting the hearing.[3]

## TCPA MOTION TO DISMISS

The TCPA's stated purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Aiming

---

[3]Terrell on appeal complains about Mazaheri being able to file supplemental responses to the TCPA motion as a result of the reset. However, section 27.003(e) clearly states that a party responding to the TCPA motion to dismiss may file a response "not later than seven days before the date of the hearing . . . unless otherwise provided by an agreement of the parties or an order of the court." TEX. CIV. PRAC. & REM. CODE § 27.003(e). Thus, once the hearing on the motion to dismiss was reset, Mazaheri was free to file a supplemental response so long as any response filed was "not later than seven days before the date" of the reset.

to fulfill this purpose, the TCPA provides for dismissal of a "legal action" "if the moving party demonstrates that the legal action is based on or is in response to" (1) the party's exercise of the right to free speech, the right to petition, or the right of association; or (2) an act of a party described by section 27.010(b), unless "the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. §§ 27.003(a), 27.005(b)-(c), 27.010(b).

We review issues regarding interpretation of the TCPA de novo. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). We review a trial court's denial of a TCPA motion to dismiss de novo. *Youngblood v. Zaccaria*, 608 S.W.3d 134, 137 (Tex. App.—San Antonio 2020, pet. denied). In determining whether the parties have met their respective burdens, the trial court "consider[s] the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). In emphasizing that a reviewing court must consider the pleadings, the supreme court has observed that "the plaintiff's petition . . . is the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (citation omitted). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Id*. "When it is clear from the plantiff's pleadings that the action is covered by the Act, the defendant need show no more." *Id*. Finally, in reviewing a ruling on a TCPA motion, we view the pleadings and evidence in the light most favorable to the nonmovant. *Youngblood*, 608 S.W.3d at 137.

### A. Allegations of Defamation in Mazaheri's Petition

In her original petition filed on April 1, 2021, Mazaheri alleged that Terrell

defamed [Mazaheri], in writing, by making false and defamatory statements of and concerning [Mazaheri], which were published on or about December 6, 2020 and February 7, 2021, and continuing thereafter, without privilege or in a context which

demonstrates the abuse of any alleged privilege, and which constitute libel *per se* and *per quod*, with actual malice, that is, with knowledge and/or serious doubt as to the truth or falsity of the statements. Specifically, [Terrell] posted the following on Facebook:

> [Terrell Facebook Post February 7]
>
> To the Lady who thought it would be a great idea to walk into court and lie about me again and again and again. Try to defame me. Try to turn me into the monster that YOU are. And keep me silenced. Then, *fool around with my husband. And move him into your law office.* Then, f*ck with my kids. Including [child's name] which has nothing to do with you. I'm sorry you thought I was weak. But Matt should have warned you. I don't give up. I'm the hardest working person I know. And I am the toughest momma bear that walked this earth.
>
> [Excerpt from Terrell Facebook Post December 6, 2020]
>
> . . . [child] back until I would agree to a 50/50 custody with [husband]. *Rashin Mazaheri is aware of [husband] hiding our child and appears to be his accomplice in doing so both times.* CPS is now involved. Yet, he was . . . . Because these are clearly setup by Mrs. Mazaheri. I even have proof that she is attempting to set hearings with the court clerk without mine or my attorneys' knowledge. I have voice recordings of Mr. Duke . . . .

(emphasis added).

In her petition, Mazaheri further alleged that the above "publications are false, and defamatory and communicated that Mazaheri, a lawyer in good standing and a married woman, is guilty of Professional Misconduct, adultery, sleeping with a client, and of a Serious Crime, that [Mazaheri] is under 'investigation' by the State Bar of Texas for improper conduct, and generally that [Mazaheri] is unfit to practice her chosen profession." Mazaheri alleged that the defamatory statements had damaged "her good name and professional reputation," resulting in Mazaheri sustaining "nominal, general and special damages." Further, in a paragraph titled "Actual Malice/Intentional Conduct," Mazaheri alleged Terrell had published the libelous statements "with

reckless disregard for truth or falsity, knew that her statements were false when she made them, and intended to harm [Mazaheri] by making them." Mazaheri sought exemplary damages.

Mazaheri's petition specifically complains about three defamatory statements made by Terrell. First, she alleges Terrell's Facebook post dated February 7, 2021 accused her of adultery and sleeping with a client. Specifically, she points to the following portion of Terrell's post: "Then, fool around with my husband. And move him into your law office." Second, Mazaheri's petition alleges that Terrell's December 6, 2020 Facebook post accused her of a serious crime: "Rashin Mazaheri is aware of [Duke] hiding our child and appears to be his accomplice in doing so both times." Third, Mazaheri's petition alleges the following statement by Terrell in her December 6, 2020 Facebook post is defamatory: "I even have proof that she is attempting to set hearings with the court clerk without mine or my attorney's knowledge." We consider each alleged defamatory statement in turn.[4]

### 1. *"Then, fool around with my husband. And move him into your law office."*

Under the TCPA three-part analysis, we must first consider whether Terrell demonstrated that Mazaheri's petition was a legal action based on or in response to Terrell's exercise of one of the rights set forth in section 27.005(b), including as relevant here, the right to free speech under the First Amendment. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 654 (Tex. App.—San Antonio 2021, no pet.).

Terrell's petition is a "legal action" as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6) (defining "legal action" as "a lawsuit, cause of action, petition, complaint, cross-

---

[4]We note that Mazaheri argues in her brief that because her original petition referred to the date of the Facebook posts, we should look at other possible defamatory statements made in those posts. However, under the TCPA, "more than mere notice pleading is required to establish a plaintiff's prima facie case." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id*. (citation omitted). Thus, we will consider only whether the TCPA applies to the specific defamatory statements referred to in Mazaheri's petition.

claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief"). The question thus turns to whether Terrell demonstrated that Mazaheri's petition was based on or in response to Terrell's exercise of her right to free speech. "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). "Matter of public concern" means a statement or activity regarding:

(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B) a matter of political, social, or other interest to the community; or

(C) a subject of concern to the public.

*Id*. § 27.001(7). The Texas Supreme Court has explained that the phrase "matter of public concern" "commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)).

In her brief, Mazaheri concedes that "some portions of [Terrell's] publications relate to a matter of public concern." However, Mazaheri argues because the statement "fool around with my husband" discusses a purely private matter, the TCPA does not apply to this specific defamation allegation. We note that Texas has not adopted any rule that would bar sexual relations between a lawyer and a client. *See* William Herrsher, *Ethics and Law: Love for Trade*, 77 TEX. BAR JOURNAL 606, 608 (July 2014) (explaining that Texas has no specific rule prohibiting sexual relations between a lawyer and client, emphasizing that a no-sex-with-client proposed rule was rejected in 2011). However, such a relationship may lead to possible unethical conduct. *See* 48 Robert P. Schuwerk & Lillian B. Hardwick, TEX. PRAC. SERIES: HANDBOOK OF TEX. LAWYER & JUD.

ETHICS, § 6:6 (2022 ed.) (explaining that sexual relationship between a lawyer and a client "often leads to severe conflict of interest" and "may involve unfair exploitation of the lawyer's fiduciary position and presents a significant danger that the lawyer's ability to represent the client adequately may be impaired"). In this case, the statement at issue, "fool around with my husband" is vague. It simply does not relate to any specific unethical conduct by an attorney. Thus, we conclude that the statement "fool around with my husband" is not a matter of public concern, and the TCPA does not apply to the statement. *See Creative Oil*, 591 S.W.3d at 135. Accordingly, the trial court did not err in denying Terrell's motion to dismiss with regard to this allegation.

### 2. *"Rashin Mazaheri is aware of [Duke] hiding our child and appears to be his accomplice in doing so both times."*

We next consider the statement regarding Mazaheri being an accomplice to Duke "hiding our child." Under our analysis, we first consider whether this statement relates to a matter of public concern. While "hiding" does not necessarily denote criminal conduct in and of itself, when "hiding" is combined with acting as an "accomplice," a reasonable person could understand the statement as accusing Mazaheri of being an accomplice to a kidnapping. *See Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (explaining that whether a statement is reasonably capable of a defamatory meaning is determined by the court as a matter of law using an objective standard). Whether an attorney is committing a crime is a matter of public concern. *See Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding in TCPA appeal that man who created website for purpose of airing grievances against his former wife's attorney was speaking of a matter of public concern when he called for criminal charges to be brought against the attorney). Thus, we conclude that, for purposes of this TCPA motion, Terrell was speaking about a matter of public concern.

Second, the record is clear that Mazaheri's petition was filed in response to the statements made by Terrell on Facebook. *See Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 276 (Tex. App.—Tyler 2021, pet. denied) ("A plaintiff's claims are 'in response to' a protected activity when they react to or are asserted subsequently to the communication."). Thus, Terrell has demonstrated that Mazaheri's petition was in response to Terrell's exercise of her right to free speech, and the TCPA applies to the allegation that Mazaheri was an accomplice to a kidnapping. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (TCPA applies to a legal action based on or in response to exercise of right to free speech).

As the TCPA applies to this alleged defamatory statement, we must next consider whether Mazaheri has established by clear and specific evidence a prima facie case for each essential element of the defamation claim in question. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). "Neither the TCPA nor common law define 'clear and specific evidence.'" *KB Home*, 629 S.W.3d at 658 (citation omitted). "Clear" and "specific" "mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). "Clear and specific evidence requires 'enough detail to show the factual basis' of the claim, but it does not: (1) 'impose an elevated evidentiary standard,' (2) 'categorically reject circumstantial evidence,' or (3) 'impose a higher burden of proof than that required of the plaintiff at trial.'" *KB Home*, 629 S.W.3d at 658 (quoting *In re Lipsky*, 460 S.W.3d at 591). A prima facie case "'refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.'" *Id*. (quoting *In re Lipsky*, 460 S.W.3d at 590). "It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. (quoting *In re Lipsky*, 460 S.W.3d at 590).

The elements of a prima facie case for defamation are: (1) "the defendant published a false statement"; (2) "that defamed the plaintiff"; (3) "with the requisite degree of fault regarding the

truth of the statement (negligence if the plaintiff is a private individual)"; and (4) "damages, unless the statement constitutes defamation per se." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). Terrell first argues on appeal that Mazaheri did not present any evidence that her statement was false. She points to text messages between herself and her husband in support of her argument that Duke was acting at the direction of Mazaheri. However, under our TCPA standard, we are not considering the merits of this case as a factfinder. Instead, we are considering merely whether Mazaheri presented clear and specific evidence to support her prima facie case. *See KB Home*, 629 S.W.3d at 658. Mazaheri, in turn, points to her affidavit and to the affidavit of Terrell's husband. In her affidavit, Mazaheri affirms that she had no knowledge of either "kidnapping" incident "either before or at the time of either alleged incident" and that she did not "participate in any decisions made by" Terrell's husband. Mazaheri further affirms that she "was not involved with [Terrell's husband] in any way in connection with either of those incidents" and that she "did not advise [Terrell's husband] regarding removal of the child." In his affidavit, Duke states the following with respect to the "kidnapping" incident:

> Terrell makes the accusation that Mazaheri helped me hide our 2-year-old daughter on two different occasions. The facts are that I had to leave the house with [daughter] because of Terrell's erratic behavior and for our safety. However, at no time have I violated any order permitting Terrell to have possession of our child.

Given this evidence, we conclude Mazaheri has presented clear and specific evidence that she was not an accomplice in the alleged kidnapping of Terrell's child and thus Terrell's statement was false.

Terrell next argues that Mazaheri has not presented evidence that Terrell acted with the requisite degree of fault. "The status of the person allegedly defamed determines the requisite degree of fault." *In re Lipsky*, 460 S.W.3d at 593. "A private individual need only prove

negligence, whereas a public figure or official must prove actual malice." *Id*. Thus, a plaintiff must prove actual malice in the following types of cases:

> (1) when a public official sues a media or nonmedia defendant about a statement that relates to the public official's performance or fitness for office, *see New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964);
>
> (2) when an all-purpose public figure sues a media or nonmedia defendant about a statement that involves a matter of public concern, *see Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155 (1967); *Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989);
>
> (3) when a defendant has a qualified privilege, *see Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.); and
>
> (4) when a limited-purpose public figure sues a media or nonmedia defendant about a statement that involves a matter of public concern, *see WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 573 (Tex. 1998); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 574 (Tex. App.—Austin 2007, pet. denied).

Here, Terrell argues that Mazaheri is a limited-purpose public figure and thus must show clear and specific evidence of actual malice by Terrell in publishing the alleged defamatory statement. Limited-purpose public figures are those who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . invit[ing] attention and comment," who "inject[ ] [themselves] or [are] drawn into a particular public controversy . . . assum[ing] special prominence in the resolution of public questions" or "engag[ing] the public's attention in an attempt to influence its outcome." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351, 352 (1974). Whether a person is a public figure is a question of law. *WFAA-TV*, 978 S.W.2d at 571.

In determining whether an individual is a limited-purpose public figure, we apply a three-part test:

- 12 -

(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Id*. Further, in considering whether a public controversy existed and to define its contours, we

must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.

*Id*. at 572. Additionally, in determining whether an individual had "more than a trivial or tangential

role in the controversy," we consider

(1) whether the plaintiff actually sought publicity surrounding the controversy;

(2) whether the plaintiff had access to the media; and

(3) whether the plaintiff "voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation."

*ZYZY Corp. v. Hernandez*, 345 S.W.3d 452, 457 (Tex. App.—San Antonio 2011, no pet.) (quoting

*WFAA-TV*, 978 S.W.2d at 573). "A lawyer does not become a public figure merely because he

undertakes to represent clients in difficult, unpopular, high profile, or sensational types of cases,

or advocates for a famous or controversial client." *Id*. at 458 (citation omitted). "A lawyer

representing a client in a very public controversy, but who does 'not thrust himself into the vortex

of [the] public issue, nor . . . engage the public's attention in an attempt to influence its outcome'

does not, by virtue of the legal representation, make himself a public figure." *Id*. (quoting *Gertz*,

418 U.S. at 353). The record in this case does not support a determination that the dispute between

the parties in this case was public as described above, that Mazaheri actively sought publicity

surrounding the controversy, that Mazaheri had access to the media, or that Mazaheri voluntarily

engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *See id*. at 457-58. The record reflects that Mazaheri is merely a local attorney representing Terrell's husband in the divorce proceeding. We therefore conclude that for purposes of this appeal, she is not a limited-public figure with respect to the alleged defamatory statements at issue. Accordingly, we conclude Mazaheri is a private individual for purposes of this appeal.[5]

As a private individual, Mazaheri must have clear and specific evidence that Terrell was negligent in publishing the statement at issue. *See Lipsky*, 460 S.W.3d at 593. "In the defamation context, negligence is defined as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person." *Day v. Fed'n of State Med. Bds. of U.S., Inc.*, 579 S.W.3d 810, 822 (Tex. App.—San Antonio 2019, pet. denied) (citation omitted). "In other words, the plaintiff must establish that the defendant knew or should have known that the defamatory statement was false." *Id*. Therefore, Mazaheri was required to establish, by clear and specific evidence, that Terrell knew or should have known that her statement about Mazaheri being an accomplice in a kidnapping was false. *See id*.

Here, Mazaheri points to the following facts (as stated both in her affidavit and in Duke's affidavit) as evidence to show Terrell acted with negligence in publishing her statement that Mazaheri was an accomplice in a kidnapping: On April 25, 2019, no divorce proceeding was pending between Terrell and Duke, and thus there was no applicable court order. At about 6:00

---

[5]We note that Terrell also argues Mazaheri must have clear and specific evidence that Terrell acted with actual malice for purposes of this TCPA appeal, because Mazaheri pled actual malice in her original petition. In Mazaheri's petition, paragraph seven "Actual Malice/Intentional Conduct" alleges that Terrell "published the libelous statements with reckless disregard for truth or falsity, knew that her statements were false when she made them, and intended to harm [Mazaheri] by making them." It appears from Mazaheri's brief that this allegation was made so that she could obtain more than actual damages. *See Brady*, 515 S.W.3d at 883 ("The First Amendment also requires that a private plaintiff prove actual malice, that is, 'knowledge of falsity or reckless disregard for the truth,' before recovering anything more than actual damages for a statement on a matter of public concern.") (quoting *Gertz*, 418 U.S. at 349-50). However, Mazaheri making an allegation of actual malice for purposes of damages does not equate to her having to show actual malice for purposes of Terrell's TCPA motion to dismiss. Pursuant to the TCPA, Mazaheri must provide clear and specific evidence for each element of defamation. The law is clear that to state a prima facie claim for defamation, Mazaheri, as a private individual, need only show that Terrell acted with negligence. *See Lipsky*, 460 S.W.3d at 593.

a.m., Duke felt he had to leave the family home with his and Terrell's young daughter because of Terrell's "erratic behavior." By leaving the home with their daughter, Duke did not violate any court order as there was not one. Terrell reported this April 25, 2019 incident to the police. An officer responding to the call told Terrell that there was "nothing to write up," the dispute was a "civil matter," and the police were "not going to get involved" because "no laws were broken." Duke then asked Mazaheri to request a temporary restraining order. Mazaheri "secured a proper affidavit from Duke setting out sufficient evidence to support denial of unsupervised visitation," and then on April 29, 2019, sought and obtained an ex parte temporary restraining order in accordance with provisions of the Family Code. Pursuant to the order, Terrell was ordered to have supervised visitation with the child. According to Mazaheri, she did not and still has no reason to doubt the veracity of the allegations in Duke's affidavit, which was used to obtain the temporary restraining order. Terrell then filed a motion to dissolve the temporary restraining order. Terrell's motion did not allege Duke's affidavit was forged, fabricated, or false. It simply argued the affidavit was insufficient to support a temporary restraining order. After a hearing on May 3, 2019, the trial court denied Terrell's motion to dissolve the temporary restraining order. That same day, Terrell agreed pursuant to a Rule 11 Agreement that she would not violate the temporary restraining order and thus would "have supervised possession and access" with the child. Terrell and Duke then attempted to reconcile, and the divorce proceeding was nonsuited in October 2019, resulting in Mazaheri's representation of Duke ending.

Like the first incident, at the time of the second incident on January 29, 2020, there was no court order applicable to possession of Duke and Terrell's child. According to Duke, at 7:30 p.m., Terrell became upset, threatened to call the police, and locked herself in the bedroom. Because their daughter was having a hard time falling asleep, Duke drove her around the neighborhood in an effort to get her to fall asleep. While he was gone, Terrell removed the Ring Video from their

front door. After Duke and his daughter arrived at the house, the police arrived. The police talked to both Duke and Terrell, and told Terrell that her dispute with Duke was a "civil matter." At about 10:00 p.m., the police arrived at the home again, explaining that Terrell had made another call. They asked Duke where Terrell was. He responded that she was locked in the bedroom. After the police knocked repeatedly on the bedroom door, Terrell came out of the bedroom. She said she "had called the police because the last officers refused to do anything" and "were unprofessional." The next morning, Duke and his daughter were watching television on the couch "when Terrell snatched [their] daughter from where she was seated and, with [their] daughter in her arms began walking backwards recording [Duke] with a cell phone camera, saying that [Duke was] 'following her.'" Duke told Terrell their daughter was not going with Terrell. He said Terrell could leave but their daughter was staying. Terrell then handed their daughter to Duke and left the house. When Terrell did not return after an hour and a half, Duke re-hired Mazaheri to file another divorce proceeding. According to Duke, for "the following days and weeks, there were discussions between me and Mazaheri on one hand, and Terrell and her lawyer, . . . to make arrangements for exchanging [their] daughter." Duke and Terrell eventually agreed to ask the court to order them to exchange their daughter every forty-eight hours.

Mazaheri argues the above evidence shows that at the time of both "kidnapping" incidents, Terrell knew there was no court order regarding possession of her and Duke's child. She also knew no divorce proceeding was pending. Further, there is evidence that when she called the police on multiple occasions, they informed her the dispute was a civil matter and no crimes had been committed. We conclude that based on the above evidence (as shown in Mazaheri's and Duke's affidavits), there is clear and specific evidence from which a rational factfinder could determine that at the time Terrell made her December 6, 2020 and February 7, 2021 Facebook posts, she

knew or should have known that Mazaheri was not an accomplice in kidnapping her daughter. *See Day*, 579 S.W.3d at 822 (explaining negligence standard in defamation case).

Finally, Terrell argues that Mazaheri has not presented clear and specific evidence of damages. A plaintiff must show that a defamatory statement proximately caused damages unless the statement is defamatory per se. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015). Whether a statement qualifies as defamation per se is generally a legal question. *Id*. The supreme court has held that accusing someone of a crime is defamatory per se. *Id*. Here, as explained previously, for purposes of this TCPA motion, Terrell's statement can be understood as accusing Mazaheri of being an accomplice to the crime of kidnapping. Thus, Mazaheri was not required to show proof of damages. *See id*.

For the reasons discussed above, we conclude that with respect to Terrell's statement of Mazaheri being an accomplice to kidnapping, Mazaheri has presented clear and specific evidence to support her claim of defamation. Therefore, the trial court did not err in denying Terrell's motion to dismiss as to this allegation.

### 3. *"I even have proof that she is attempting to set hearings with the court clerk without mine or my attorney's knowledge."*

We next consider the third allegation of defamation in Mazaheri's original petition: "I even have proof that [Mazaheri] is attempting to set hearings with the court clerk without mine or my attorney's knowledge." With regard to this third statement, we hold as a matter of law it is not defamatory. *See Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) ("If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails."). Attempting to set a hearing with the court clerk without the other party's

knowledge is not professional misconduct; the statement simply does not defame an attorney. *See id*. at 62 (explaining that "a defamatory statement is one that tends to injure a person's reputation" and is "defamatory *per se* if it injures a person in her office, profession, or occupation"). Thus, because this statement is not defamatory, the trial court erred in not granting Terrell's TCPA motion with respect to this third allegation.

### CONCLUSION

Because we conclude the statement that Mazaheri was attempting to set hearings with the court clerk without Terrell's or her attorney's knowledge is not defamatory, the trial court should have granted Terrell's TCPA motion to dismiss with respect to this claim. Therefore, with respect to this claim only, we reverse the trial court's order in part and render an order of dismissal. We affirm the remainder of the trial court's order denying Terrell's TCPA motion. We remand this case to the trial court for a determination of attorney's fees and costs as to Mazaheri's defamation claim based on the statement that Mazaheri was attempting to set hearings with the court clerk without Terrell's or her attorney's knowledge.

Liza A. Rodriguez, Justice